The Honorable John M. Toplikar State Representative, 15th District 507 E. Spruce Olathe, Kansas 66061
Dear Representative Toplikar:
You request our opinion on the general legality of a computerized public record retrieval and request system being used by Johnson county. You note that the county has established the "Johnson County Information Network" (JCIN). You question certain aspects of the procedure adopted by JCIN and whether it comports with the Kansas open records act (KORA). We understand from Johnson county counselor Don Jarrett that this program allows people to have dial-up modem access to view the county real estate files and tax roll information, but that this system is not the required or sole method for accessing these public records.
You enclose several documents used by the county in connection with this system. There are paragraphs in the request form that have the requestor state, "I understand that my access to the data and information obtained through JCIN is at the sole discretion of Johnson County, Kansas and the Committee and that the County may terminate my access at any time without cause" and "I shall use the data and information I obtain through JCIN for internal business purposes only, and will not provide such data or information to any person or organization, except when it is appropriate to do so in order to carry out the normal functions of my position."
The "Dial-Up Data Access and License Agreement" sets forth the terms and conditions under which the county will make available certain data and information by an on-line electronic information network. In article I(A) of the agreement the requestor is granted a license that is non-exclusive, revocable and non-transferable. Article II describes the data and information that will be provided: "The parcel, address and ownership inquiry, the legal descriptions and values, the taxes and special assessments, the levies and tax districts, and the residential property characteristics."
The access request form asks the record requestor for: (1) The name of the company or person making the request (2) the billing address and other identifiers, (3) a "Security Request" for real estate information (i.e. certified appraiser number for each individual), (4) a $50.00 annual license fee and (5) a $5.00 per user fee. You inform us that the county also charges an on-line connect fee of 31 cents per minute. With these and other facts in mind, you ask us to determine whether the system is violative of the KORA.
The KORA is set forth at K.S.A. 45-215 et seq. It requires that all public records be open unless the specific record is permissibly or mandatorily closed by law. K.S.A. 45-216. The first KORA issue is usually whether the record (or information) in question is in fact a public record. K.S.A. 1994 Supp. 45-217(f) broadly defines public records as "any recorded information, regardless of form or characteristics, which is made, maintained or kept by or is in the possession of any public agency. . . ."
K.S.A. 1994 Supp. 45-221, as amended by 1995 House Bill No. 2203, lists the types of public records that may be closed. It appears that some of the records in question may be the type of record described by K.S.A. 1994 Supp. 45-221(b):
 "Except to the extent disclosure is otherwise required by law or as appropriate during the course of an administrative proceeding or on appeal from agency action, a public agency or officer shall not disclose
financial information of a taxpayer which may be required or requested by a county appraiser to assist in the determination of the value of the taxpayer's property for ad valorem taxation purposes; or any financial information of a personal nature required or requested by a public agency or officer. . . ." (Emphasis added).
K.S.A. 1994 Supp. 45-219, K.S.A. 45-218 and K.S.A. 45-220 address the appropriate or permissible procedures associated with requesting and obtaining access to or copies of public records that may be disclosed. Under K.S.A. 45-218(b), persons seeking access to public records may inspect such records during regular office hours and during any established additional hours. Pursuant to K.S.A. 45-218(f), a public agency may charge and require advance payment of a fee for providing access to or furnishing copies of public records, subject to K.S.A. 45-219.
K.S.A. 1994 Supp. 45-219(a) and K.S.A. 45-220(b) allow the public agency to require a written request if copies or inspection of public records is requested. K.S.A. 1994 Supp. 45-219(c) provides:
 "Except as provided by subsection (f) or where fees for inspection or for copies of a public record are prescribed by statute, each public agency may prescribe reasonable fees for providing access to or furnishing copies of public records, subject to the following: (1) In the case of fees for copies of records, the fees shall not exceed the actual cost of furnishing copies, including the cost of staff time required to make the information available. (2) In the case of fees for providing access to records maintained on computer facilities, the fees shall include only the cost of any computer services, including staff time required. . . ." (Emphasis added).
With these general KORA rules in mind, we will now address your specific questions.
You first ask if the county is authorized to license persons for the privilege of accessing public records. A license is generally "permission by competent authority to do an act which, without such permission, would be illegal, a trespass, or a tort." Black's Law Dictionary 829 (5th ed. 1979). A license thus is leave to do what would otherwise be impermissible. The KORA gives any person the right to access open public records. While a certain procedure may be used to facilitate access, the requestor ordinarily needs no additional permission or authority to obtain copies of or access to open public records.
However, the KORA does not speak to situations involving the availability of two alternative means of access. Whether such permission (or license) is appropriate or necessary in this situation depends upon the exact nature and type of record being requested or accessed, the laws applicable to those records, and other available means of access. The "license" in this instance appears to be the means of granting authority to connect directly into county computer equipment. A public record custodian has the right and the duty to insure that public records are properly cared for. See K.S.A. 45-218 and 45-219(b). Thus, in order to maintain some system and record safety, it may be appropriate that persons utilizing the computerized access service be pre-approved in advance of their being permitted computer access. Such advance permission to use the system may take the form of a "license," as long as the county maintains some other means of access.
Your second question is whether the KORA allows approval of the license by the named committee. The KORA recognizes that record request decisions are made by the "official record custodian" or their designee. See K.S.A. 1994 Supp. 45-217(c) and (d). However, if the specific record requested is not permissibly closed pursuant to some legal authority, there is no committee or record custodian decision that can override the requirements of the KORA. If a public record is not permissibly closed and is available in either computer or hard copy, the requestor is entitled to obtain the record in either form, subject only to the fees and procedures allowed by the KORA and law.
You next raise questions concerning article II, paragraph E of the agreement. As you point out, this language asserts that the data base ". . . and the data and information accessed under this Agreement are proprietary, intellectual property of the County and shall not be considered or deemed as open, public records, which are available for inspection and viewing in suitable and accessible alternative forms. . . ." K.S.A. 1994 Supp. 45-217(f) defines a public record. Unless a specific statute supersedes or replaces this authority, any contrary definition of a public record is void. Moreover, if a record meets the statutory definition of a public record, it may not be closed without legal authority to do so. The records in question all appear to be made, maintained or kept by and in the possession of the county, and thus, they meet the K.S.A. 1994 Supp. 45-217(f) definition. We have not located any authority or exception to K.S.A. 1994 Supp. 45-217(f) permitting the county to redefine the term public records to exclude those records in such a system, or those that may later be produced by the use of software created by a county. A contract term cannot redefine what constitutes a public record nor can county home rule be used to change the KORA so as to close an otherwise open public record. See Attorney General Opinions No. 93-55 and 91-116.
The county characterizes the computerized information as proprietary in nature. When used in connection with property, the word proprietary ordinarily means that a thing is owned, or belongs to the entity claiming that type of interest. See Loblaw,Inc. v. New York State Bd. of Pharmacy, 12 A.2d 180 (N.Y. 1961). When a municipality is engaged in performance of a "governmental function" it exercises sovereign power to look after the general public; by contrast, when it embarks upon an enterprise which is commercial in character or which is usually carried on by private entities, it is engaged in a "proprietary enterprise." City ofWichita, Kan. v. U.S. Gypsum Co., 828 F. Supp. 851, 860 (D.Kan. 1993).
 "In determining whether activities of a municipal corporation are governmental or proprietary, it is proper to consider whether the activity is primarily for the advantage of the state as a whole or the special local benefit of the community involved, and to further consider whether such activity is in performance of a duty imposed upon the municipality by the sovereign power, or is in the exercise of a permissive privilege given by the sovereign power, but such tests are not conclusive to determine the capacity in which the city's activities are conducted." Id. at 860.
The KORA does not require that computerized on-line access be given to public records nor that the county create a software program to provide such a service. Thus, the software itself and the on-line service may properly be characterized as proprietary in nature. Nevertheless, the KORA requires that, once a record is created or possessed by an agency, all such records are public records and must therefore be open unless otherwise closed by law. It is our opinion that the form of the record, computerized or hard copy, does not alter the uniformly applicable provisions of the KORA.
We realize that computer formatted information does not always fit neatly within concepts previously applied to paper records. This is especially true when a newly created software program allows the creation of a heretofore non-existent record. However, there is authority supporting application of public records law to all records possessed by a public agency, including computerized records. State ex rel Stephan v. Harder, 230 Kan. 573 (1982) involved the then existing public records law and computer tapes in the possession of a state agency. The court held that computer tapes kept and maintained by the state agency were "official public records." Thus, such computerized information was subject to public scrutiny, unless the record in question was confidential. However, the court also recognized that the records law permitted the agency to require a deposit of money to defray the anticipated expense of complying with the request. Although this case predates enactment of the KORA, the current KORA definition of a "public record" is even broader. Harder thus provides some guidance with regard to the public record characterization of (and access to) computerized information in the hands of a Kansas public agency.
Attorney General Opinion No. 88-152 also addressed public access to or the provision of computerized information. In that situation, a county had its voter registration list on a computer disk. Attorney General Stephan was asked if a copy of that disk, or other computer-readable form, was required rather than a hard copy print-out. It was the opinion of Attorney General Stephan that, pursuant to the Kansas open records act, any person had the right to obtain a computerized voter registration list in computer format if the public agency had the capability of providing the record in that format. However, that opinion went on to note the provisions of K.S.A. 1994 Supp. 45-221(a)(16) which speak to permissive closure of computer software programs.
K.S.A. 1994 Supp. 45-221(a)(16) does not redefine software or a data base possessed by a public agency as being something other than a public record. Rather, it recognizes that a public agency possessing such records is not required to provide access to or copies of that software. Thus, while the software program is a public record, it may be closed. If the county chooses to provide copies of that otherwise closed software, it may permissibly limit the terms under which the software is provided, as long as such terms do not otherwise violate existing and applicable law. Once the county has chosen to provide such a service and copies of otherwise permissibly closed software, we do not believe that permission allows a county to alter uniformly applicable state law such as the KORA.
Without specific authority overriding the KORA, public agencies are not authorized to close an otherwise open public record merely because software created or owned by the public agency was used to create the same or a different record in computerized form. If a record meets the description and definitions set forth in K.S.A.45-217(f), it is deemed a public record, and must then be open unless closure laws apply to the specific record in question. We are unaware of any closure law or legal authority allowing blanket closure of public records that are maintained on a computer system or available through computerized systems.
Portions of the county created documents you provide speak to K.S.A. 21-3914 (which prohibits certain uses of names or addresses gathered from public records). As noted in K.S.A. 45-220(c), access to some public records is limited or prohibited pursuant to K.S.A. 21-3914. It appears from the documents you provide that the county is attempting to require compliance with this statute. This is completely appropriate and in accordance with the criminal statute and the provisions of the KORA. However, once a person obtains a public record, future uses of such records cannot be limited beyond the scope of K.S.A. 21-3914 or other specifically applicable authority. We find no authority allowing the county to limit future uses of mandatorily open public records, beyond that authority granted under K.S.A. 21-3914 and K.S.A. 45-220. However, if a public record may be discretionarily closed pursuant to specific authority applicable to the public record in question, access to that permissibly closed public record may include a limitation upon its future uses.
You next question why an applicant is required to sign an open records act agreement when the county maintains that these are not public records. We believe that computerized records may be public records if they meet the definition set forth in K.S.A.45-217. No contract term or mutual agreement can alter the definitions set forth in K.S.A. 45-217. It does not matter that the records are also available in an alternative hard copy format. Once the county has chosen to input public records into a computerized form, from which software can more quickly find a record or even produce a new record, it has created, maintained and is in possession of a record (albeit perhaps a new and improved record), which thus becomes subject to the KORA. While K.S.A. 1994 Supp. 45-221(a)(16) allows the software to be discretionarily closed, we find no provision of the KORA that allows or requires closure of public records maintained in the database merely because the public record may now be more readily obtained or created through use of such permissibly closed software.
Your fifth question concerns the fees connected with the JCIN access to computerized information. The KORA permits a public agency to charge established fees for providing access to or copies of public records. These fees may include staff time and any expenses actually associated with providing the access or copies requested. The fees for access to or copies of public records are not intended to make money for or support the daily operations of the public agency. See K.S.A. 1994 Supp. 45-219(c) and K.S.A. 45-218(f). As stated in Attorney General Opinion No. 87-4, agencies may charge reasonable fees for access to or copies of records, and fees are reasonable if they do not exceed the actual cost. However, the county is not required to create or provide access to computer software that allows on-line access to public records. Thus, it may properly charge separately for providing such an additional service, and such assessments are not subject to the restrictions of the KORA. Without the facts surrounding the actual cost associated with providing the records as opposed to the service, it is difficult for us to opine on the reasonableness of the established fee schedule.
In summary, the Kansas open records act requires access to all public records, unless they are permissibly or mandatorily closed pursuant to some specific legal authority. While a county may, through its exercise of home rule, establish a proprietary computerized system which allows access to certain public records on a paid subscription basis, this arrangement does not alter the applicability of the KORA to public records nor does such a proprietary system alter the nature of a public record. A public agency may establish subscription fees and other charges for on-line access to computerized public records through the use of proprietary software. Public records accessed through such a system remain public records, and must also be available upon a record request, at a fee not exceeding the actual cost of their production.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
CJS:JLM:TMN:bas